# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE JACOBS, | ) | |
| | ) | Civil Action No. 08 - 470 |
| Plaintiff, | ) | |
| | ) | Chief District Judge Joy Flowers Conti |
| v. | ) | |
| | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| PITTSBURGH POLICE | ) | |
| DEPARTMENT, *et al.*, | ) | ECF Nos. 320, 321 |
| | ) | |
| Defendants. | | |

## **REPORT AND RECOMMENDATION**

### I. **RECOMMENDATION**

It is respectfully recommended that the Motions to Dismiss, which have been converted into Motions for Summary Judgment, filed by the Allegheny County Defendants[1] (ECF No. 320) and the Nurse Defendants[2] (ECF No. 321) should be denied to the extent Defendants seek revocation of Plaintiff's *in forma pauperis* status for violation of the "three strikes rule" codified in 28 U.S.C. § 1915(g). To the extent Defendants seek dismissal for Plaintiff's failure to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), it is recommended that ruling on the Motions be denied without prejudice and refiled closer to the trial of the matter for the Court to conduct an evidentiary hearing and made a determination as to the factual disputes on this issue.

---

[1] Defendants Onorato, Emerick, Rustin, Pofi, Donnis, Leon, Chapman, Beveridge, Bozak, Pindel, Kavals, McCall, Stanton, Rubel, Crapis, O'Keefe, Usner and the Pittsburgh Police Department, collectively, will be referred to as the "Allegheny County Defendants."

[2] Nurses Anita, Bethann and Jane Doe, collectively, will be referred to as the "Nurse Defendants."

## II. REPORT

Plaintiff, Andre Jacobs, is a state prisoner who alleges that his constitutional rights were violated while he was being held at the Allegheny County Jail between an unspecified date in April, 2005, and September 27, 2006. (ECF No. 55 at ¶ 19.)

### A. Exhaustion of Administrative Remedies

Among the arguments that the Defendants make in support of their respective Motions is that Plaintiff did not properly exhaust his administrative remedies prior to filing suit as he was required to do pursuant to the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). Through the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides in pertinent part as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See* Booth v. Churner, 532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence, including those that involve general circumstances as well as particular episodes. *See* Porter v. Nussle, 524 U.S. 516, 532 (2002).

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See*, *e.g.*, Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

This broad rule favoring full exhaustion has one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See* Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing that "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis, 49 F. App'x at 368; *see also* Brown v. Croak,

312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp, 219 F.3d at 281 (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris, 149 F. App'x at 59. Nor can an inmate avoid this exhaustion requirement by alleging that the prison's policies were not clearly explained to him. Davis, 49 F. App'x at 368. Thus, an inmate's confusion regarding the grievance procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

In the case *sub judice*, Defendants maintain that administrative remedies were available to Plaintiff at the ACJ and because Plaintiff was aware of ACJ's grievance process, given that he expressly references it in his Complaint, and did not file any grievances prior to filing this lawsuit in 2008, this case should be dismissed. In support of this argument, they submit affidavits from Captain Robyn McCall and Sergeant Smarra who attest that they searched the

grievance records at ACJ and did not find any grievance that was filed by Plaintiff before filing this lawsuit. Thus, Defendants argue that Plaintiff did not comply with the PLRA's exhaustion requirement.

Plaintiff disputes Defendants' averments stating that the ACJ chose to make whatever grievance system that allegedly existed "unavailable" by not making the procedures known to inmates, refusing to process his complaints that were filed, denying him grievance forms and refusing to investigate his allegations. First, Plaintiff alleges that he was never provided with a copy of ACJ's grievance procedure and that ACJ does not have a policy of providing inmates with such procedures. However, he also states that there was not an established grievance procedure at the ACJ. He contends that he was aware of only two forms that were available to file complaints; the first being the ACJ Official Inmate Complaint form and the second the Inmate Request to Staff Member form.[3] He states that he used each of these forms at least 20 times but that ACJ officials routinely refused to respond. According to Plaintiff, all of his complaints (both formal and informal) went unanswered or were ignored with the exception of one formal complaint.[4]

Additionally, Plaintiff states that he informed his attorney about ACJ's policy of refusing to process inmate complaints and provided her with copies of the complaints that he had filed. She allegedly assigned her investigator, Anita M. Merlino, to investigate the issue and Merlino found no record of any complaints that Plaintiff had filed at the ACJ. Plaintiff asked his attorneys to write letters and make calls on his behalf in order to "develop a record."

---

[3] While Plaintiff alleges that there was "no established grievance procedure," he also states that he filed grievances. Notably, Plaintiff contradicts himself with these two statements but it is possible that his references to "grievances" refers to the ACJ Official Inmate Complaint forms, which he admits were available to inmates to file complaints.

[4] The undersigned is not sure what Plaintiff is referring to when he references "informal complaints".

5

Plaintiff also states that he "used every possible method" he knew of to try and get written responses to his complaints or at least make a record. He copied a lot of his complaints, signed up for sick-line to make complaints, sought out policies related to grievance procedures, reiterated his complaints orally at his monthly program review hearings and asked lawyers and loved ones to call and write letters on his behalf. He allegedly informed Defendants Pofi, Emerick, Donis and other officials about the issues complained of in this case, was told that the matters "would be investigated," but was never interviewed or informed of the results of any investigation.

Based on the parties' arguments and the record before the Court, there appears to be a factual dispute as to whether any administrate remedies were "available" to Plaintiff such that he could satisfy the PLRA's exhaustion requirement. *See* Mitchell, 318 F.3d at 529 (A "remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a).") (internal quotation marks omitted); *see*, *e.g.*, Richardson v. Goord, 347 F.3d 431 (2d Cir. 2003) (remanding case to determine factual issue concerning exhaustion where plaintiff testified he had written a letter to defendant state corrections commissioner complaining of medical treatment but letter was missing from his cell). According to the Court's research, the Fifth, Seventh, and Eleventh Circuits have held that district courts should resolve fact disputes about procedural exhaustion at a pre-trial evidentiary hearing because there is no right to a jury trial on factual disputes regarding an inmate's failure to exhaust administrative remedies as required by the PLRA. *See* Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010); Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008); Bryant v. Rich, 530 F.3d 1368 (1373-75 (11th Cir. 2008). Each of these courts has held that district judges may resolve fact disputes necessary to determine whether a plaintiff has exhausted his or her administrative remedies. Although the

Third Circuit has not squarely addressed this issue, it has issued a precedential opinion in which it signaled its agreement with the Seventh Circuit in Pavey v. Conley, 544 F.3d 739, 740 (7th Cir. 2008), stating that "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge . . . ." Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010). Because the availability of administrative remedies to a prisoner is a question of law reserved for the court (even if that determination requires the resolution of disputed facts) the undersigned recommends that this Court conduct an evidentiary hearing to resolve the factual disputes among the parties regarding Plaintiff's exhaustion of administrative remedies. Thus, ruling on Defendants' Motions should be deferred as it relates to this issue.

**B. Violation of the "Three Strikes Rule"**

Defendants maintain that Plaintiff has "three strikes" within the meaning of 28 U.S.C. § 1915(g) and therefore the Court should bar his ability to continue to proceed *in forma pauperis* in this case. *See* 28 U.S.C. § 1915(g). According to the Court's research, Plaintiff has acquired only two "strikes". *See* C.A. No. 2004-cv-1365 (W.D. Pa. Feb. 4, 2005) (case dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to exhaust his administrative remedies); C.A. No. 05-1455 (3d Cir. July 28, 2007) (appeal dismissed under 28 U.S.C. § 1915(e)(2)(B), affirming the district court's order dismissing Plaintiff's complaint for failure to exhaust his administrative remedies). *See also* Ball v. Famiglio, 726 F.3d 448 (3d Cir. 2013) (dismissal based on a prisoner's failure to exhaust constitutes a strike under the PLRA when "a court explicitly and correctly concludes that the complaint reveals the exhaustion defense on its face and the court then dismisses the unexhausted complaint for failure to state a claim"). Accordingly, revocation of Plaintiff's *in forma papueris* status based on this ground should be denied.

7

### III. CONCLUSION

For the aforementioned reasons, it is respectfully recommended that the Motions to Dismiss, which have been converted into Motions for Summary Judgment, filed by the Allegheny County Defendants (ECF No. 320) and the Nurse Defendants (ECF No. 321) should be denied to the extent Defendants seek revocation of Plaintiff's *in forma pauperis* status for violation of the "three strikes rule" codified in 28 U.S.C. § 1915(g). To the extent Defendants seek dismissal for Plaintiff's failure to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), it is recommended that ruling on the Motions be denied without prejudice and refiled closer to the trial of the matter for the Court to conduct an evidentiary hearing and made a determination as to the factual disputes on this issue.

Dated: June 5, 2014.

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Andre Jacobs
    DQ-5437
    SCI-Albion
    10745 Route 18
    Albion, PA 16475

    Counsel of Record